UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

TRAVIS WOODS,                              :
an individual,                             :       CASE NO.:   6:22-cv-883 (MAD/ML)
                                           :
                                           :
            Plaintiff,                      :
                                           :       Judge:
vs.                                        :
                                           :
                                           :       Magistrate:
                                           :
DESTINATION 770 AUTO, INC.,                :
                                           :
            Defendant.                      :
-------------------------------------------------------x

## COMPLAINT

Plaintiff, TRAVIS WOODS, by and through his undersigned counsel, hereby files this Complaint and sues DESTINATION 770 AUTO, INC. ( hereinafter "Destination Nissan" or "Defendant") for declaratory and injunctive relief, compensatory damages, statutory damages, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 *et seq.* ("NYSCRL"), and alleges:

## JURISDICTION AND PARTIES

1.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.* This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     This is an action for compensatory damages and statutory damages pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* and New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 *et seq.* This Court is vested with supplemental

jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

4.      Plaintiff, TRAVIS WOODS, (hereinafter referred to as "MR. WOODS"), is a resident of the State of New York, Oneida County.

5.      MR. WOODS is a qualified individual with a disability under the ADA, the NYSHRL, and the NYSCRL. MR. WOODS has paraplegia because of a spinal cord injury.

6.      Due to his disability, MR. WOODS is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MR. WOODS is unable to walk, stand, or use his legs without assistance.

7.      MR. WOODS has a valid New York driver's license and does not own a vehicle. However, MR. WOODS often borrows his girlfriend's vehicle which is equipped with permanent hand controls, and he is able to safely drive her vehicle.

8.      Upon information and belief, DESTINATION 770 AUTO, INC. is a foreign business corporation organized in the state of Delaware and doing business in Albany County.

9.      Upon information and belief, DESTINATION 770 AUTO, INC. can be contacted at:

> c/o James J. Morrell
> 6 Johnson Road
> Latham, NY 12110

10.     Upon information and belief, DESTINATION 770 AUTO, INC. is the owner and/or operator of Destination Nissan, located at 770 Central Avenue, Albany, New York 12206.

11.     Defendant is obligated to comply with the ADA.

12.     All events giving rise to this lawsuit occurred in the Northern District of New York,

2

Onondaga County, New York.

13.     Defendant is a place of public accommodation, specifically a sales establishment that sells

new and used cars, Nissan parts, and services Nissan vehicles.

14.     On November 10, 1998, the Department of Justice ("DOJ') issued Letter 218 to offer

guidance on a car dealership's obligation to provide hand controls so that individuals with

mobility impairments could test drive vehicles.[1] The DOJ explained:

> Expense is one factor that may properly be weighed in determining
> whether it is readily achievable for GM dealerships to obtain and
> install hand controls in cars test driven by individuals with
> disabilities. Because of the relative low cost to a dealership of
> having a set of hand controls available for installation, it is unlikely
> that the expense of hand controls themselves would make their
> installation not readily achievable. A related issue is whether certain
> hand control devices cause damage, rendering test driven cars less
> valuable upon sale. It may not be readily achievable to install hand
> controls for test drives if those hand controls caused such damage.
>
> Safety considerations also may factor into the analysis.
>
> To the extent that certain vehicle models cannot safely be fitted with
> hand controls, provision of hand controls on those vehicles is not
> required. For a safety concern to be considered legitimate, it must
> be based on actual risks to the safe operation of the services
> provided.
>
> The time required to install hand controls and the availability of
> mechanics to perform the installation are other factors to be
> considered under the readily achievable standard. Unlike when
> renting cars, consumers normally do not make appointments in
> advance to visit car dealerships and test drive cars. However, an
> experienced mechanic generally takes only ten to fifteen minutes to
> install hand controls. A dealership that has trained mechanics on site
> during showroom hours likely could provide hand-controlled cars
> for a customer to test drive without any advance notice. The
> customer would simply have to wait for a short amount of time for

---

[1] https://www.justice.gov/crt/letter-218 (last visited June 29, 2022).

3

the mechanic to install the hand controls on the car the customer desired to drive. If the customer wanted to test drive more than one car, he would have to wait while the mechanic removed the hand controls from the first car driven and then installed them on subsequent cars. In the case where a mechanic is not on site and available whenever a dealership showroom is open to customers, then hand-controlled test drives might only be readily achievable after some limited, legitimate amount of notice.

15.    Nissan, the manufacturer of the vehicles sold by Defendant, states that it "values inclusion and access in all areas of our business, and we aspire to exceed the expectations of our customers.  This is why we are committed to providing an accessible experience to all."[2]

16.    Defendant is a "3-time recipient of Nissan Dealer of Excellence Award for outstanding customer service[.]"[3]

17.    Nonetheless, despite Defendant's stated commitment to inclusivity and respect, it has discriminated against MR. WOODS by refusing to remove barriers to accessibility so that MR. WOODS can test drive any of their vehicles prior to purchase.

### Mr. Woods Gave Defendant Notice that He Needed Hand Controls to Test Drive a Vehicle.

18.    MR. WOODS has paraplegia because of a spinal cord injury and uses hand controls to operate a vehicle.

19.    MR. WOODS is in the market to purchase a vehicle, so he contacted Destination Nissan on June 23, 2022, to inquire about setting up a test drive.

20.    MR. WOODS utilized the chat box on Destination Nissan's website and asked: "Hello I

---

[2] https://www.nissanusa.com/accessibility.html (last visited Aug. 5, 2022).
[3] https://www.destinationnissan.com/aboutus.aspx (last visited Aug. 5, 2022).

use a wheelchair and would like to come in and test drive one of your vehicles do you have hand controls?"

21.     Jack Padilla, an employee of Destination Nissan, responded to MR. WOODS' inquiry and the following conversation occurred:

 

22.     By contacting Defendant through its online messaging system, MR. WOODS gave Defendant notice that he would need portable hand controls installed on any of the vehicles he wanted to test drive prior to going to Destination Nissan's dealership.

23.     Nonetheless, Defendant refused to provide MR. WOODS with hand controls so that he could test drive any of their vehicles.

24.     Rather than providing MR. WOODS with portable hand controls, Defendant, through its employee, stated that they would be unable to provide hand controls because they were an "aftermarket add on."

25.     Defendant's employee stated that hand controls can be installed on all Nissan models, but that the dealership did not have any hand controls. Based on the employee's response, it is unclear whether Destination Nissan would permit MR. WOODS to install portable hand controls to test drive any of its vehicles.

26.     At best, MR. WOODS would be required to spend hundreds of dollars to purchase portable hand controls and bring them to Defendant's dealership so he could test drive any of its vehicles. At worst, Defendant would not permit MR. WOODS to purchase and install his own portable hand controls so he could test drive a vehicle.

27.     Thus, MR. WOODS would not be able to test drive a vehicle from Defendant's dealership prior to purchasing a vehicle.

28.     MR. WOODS was deterred from visiting Defendant's dealership because he knew he would be unable to test drive any of their vehicles.

**Installing Portable Hand Controls on a Vehicle for a Test Drive is Readily Achievable.**

29.     Destination Nissan boasts that it is the "#1 Volume Nissan Dealer in the East Region from Maine to Maryland[.]" [4] Destination Nissan's website also boasts that it's service department is "filled with the best mechanics in the area[.]"[5]

30.     Upon information and belief, portable hand controls can be easily and quickly installed in most vehicles.

31.     Upon information and belief, the temporary installation of portable hand controls does not

---

[4] https://www.destinationnissan.com/aboutus.aspx (last visited Aug. 5, 2022).
[5] https://www.destinationnissan.com/service.aspx (last visited Aug. 5, 2022).

cause any damage to a vehicle.

32.     Upon information and belief, portable hand controls can be purchased online for between $200.00 and $400.00.

33.     Upon information and belief, portable hand controls can be installed and safely operated on Nissan vehicles.

34.     Upon information and belief, mechanics or other staff working at Defendant's dealership know or should know how to properly install portable hand controls onto a Nissan vehicle.

35.     Despite the relative ease of purchasing and installing portable hand controls, Defendant refused to provide MR. WOODS with portable hand controls so he could test drive any of its vehicles.

36.     Defendant operates the "#1 Volume Nissan Dealer in the East Region from Maine to Maryland" and it would be relatively inexpensive for it to purchase a set of portable hand controls for its customers to use.

37.     Defendant has the "best mechanics in the area" and therefore a service technician at Defendant's dealership should be able to install portable hand controls. Furthermore, Defendant acknowledged that hand controls can be installed on all Nissan models, implying that its technicians can install hand controls.

38.     Nonetheless, Defendant insisted it did not have "aftermarket parts" and could not provide MR. WOODS with a set of portable hand controls so he could test drive a vehicle. Defendant did not claim that installing portable hand controls would be unsafe, too expensive, damage the vehicle, or difficult to install.

7

## <u>COUNT I - VIOLATION OF TITLE III OF THE</u>
## <u>AMERICANS WITH DISABILITIES ACT</u>

39.    MR. WOODS realleges and reavers Paragraphs 1 - 38 as if they were expressly restated

herein.

40.    Defendant's dealership is a place of public accommodation, subject to the ADA, generally

located at 770 Central Avenue, Albany, New York 12206.

41.    Destination Nissan is located about eighty (80) miles away from MR. WOODS's home.

42.    MR. WOODS has paraplegia because of a spinal cord injury and is a person with a

disability within the meaning of 42 U.S.C. § 12102(2).

43.    MR. WOODS desires to test drive a vehicle from Defendant's car dealership.

MR. WOODS cannot operate a vehicle with his legs and requires hand controls to drive a

vehicle.

44.    The ADA requires public accommodations to remove barriers to access for persons with

disabilities where it is readily achievable for them to do so 42 U.S.C. § 12182(b)(2)(A)(iv)

and 28 C.F.R.§ 36.304.

45.    The ADA also requires a public accommodation to make reasonable modifications to its

policies and practices as necessary to afford its goods, services, facilities, privileges,

advantages, or accommodations to persons with disabilities, as long as doing so does not

fundamentally alter the nature of its goods, services, facilities, privileges, advantages, or

accommodations, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

46.    The ADA prohibits public accommodations, including those operating car dealerships,

from discriminating against an individual on the basis of disability in the full and equal

8

enjoyment of its goods, facilities, privileges, advantages, accommodations, and services. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

47.     By failing to provide MR. WOODS with hand controls so he could test drive its vehicles, Defendant denied MR. WOODS equal access to its goods, privileges, accommodations, advantages, and services, in violation of 42 U.S.C. § 12182(a).

48.     MR. WOODS plans to and will visit Defendant's dealership in the future as a patron.

49.     MR. WOODS presently fears that he will encounter the barriers to access which exist at Defendant's dealership if he visits the dealership to test drive a vehicle in the near future.

50.     MR. WOODS intends to and will visit Defendant's dealership to utilize the goods and services offered at the dealership, including test driving a vehicle, in the future but fears that the Defendant will continue to discriminate against him by failing to provide him with modifications so he can test drive any of its vehicles.

51.     Upon information and belief, all barriers to access and ADA violations still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though removal is readily achievable.

52.     Upon information and belief, removal of the discriminatory barriers to access at Defendant's dealership is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendant.

53.     Upon information and belief, removal of the barriers to access at Defendant's dealership would provide MR. WOODS with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations offered to the general public at the dealership.

54.     Upon information and belief, Defendant has failed to adopt any alternatives to barrier

9

removal which would provide MR. WOODS with equal access to the accommodations which are offered for public use at the dealership.

55.     Providing and installing portable hand controls in its vehicles so they can be test driven by individuals with disabilities is readily achievable by Defendant because portable hand controls are inexpensive, easy to install, and do not cause any damage to a vehicle.

56.     MR. WOODS has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205.

## COUNT II - VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
## (NEW YORK STATE EXECUTIVE LAW, §§ 296-297)

57.     MR. WOODS hereby incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

58.     As the owner, manager, lessee, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSHRL, N.Y. Exec. Law § 296(2).

59.     N.Y. Exec. Law § 296(2) provides: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

60.     The conduct alleged herein discriminates against MR. WOODS on account of his disability.

61.     The conduct alleged herein violates the NYSHRL, N.Y. Exec. Law § 296(2).

62. Defendant has violated the NYSHRL by depriving MR. WOODS of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered at the Defendant's dealership, namely the ability to test drive one of its vehicles prior to purchase.

63. Defendant has violated the NYSHRL by failing to remove the barriers to access and make reasonable modifications at its dealership.

64. Upon information and belief, removal of the discriminatory barriers to access at Defendant's dealership is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendant.

65. Defendant's conduct has resulted in a cognizable injury to MR. WOODS.

66. MR. WOODS has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

67. As a direct and proximate result of Defendant's unlawful discrimination in violation of the NYSHRL, MR. WOODS has suffered mental anguish, inconvenience, emotional distress, frustration, anxiety, humiliation, loss of autonomy, and an invasion of his civil rights.

68. MR. WOODS prays for judgment for damages to pursuant to N.Y. Exec. Law § 297(4), and all other relief allowed by law.

## COUNT III - VIOLATION OF NEW YORK STATE CIVIL RIGHTS LAW
### (N.Y. Civ. Rights §§ 40-c and 40-d)

69. MR. WOODS hereby incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

70. As the owner, manager, lessee, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSCRL, N.Y. Civ. Rights § 40 *et seq.*

71.   MR. WOODS has complied with the notice requirements of N. Y. Civ. Rights § 40-d, as notice of this action was served upon the attorney general prior to or concurrently with the initiation of this suit.

72.   Section 40 of the NYSCRL states that "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations. . . ."

73.   Section 40-c of the NYSCRL states that "[n]o person shall, because of . . . disability . . . be subjected to any discrimination in his or her civil rights . . . by any firm, corporation or institution. . . ."

74.   The conduct alleged herein discriminates against MR. WOODS on account of his disability.

75.   The conduct alleged herein violates the NYSCRL.

76.   Defendant has violated the NYSCRL by depriving MR. WOODS of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered by Defendant at its dealership, namely the ability to test drive any of its vehicles.

77.   Defendant has violated the NYSCRL section 40-c, *inter alia*, by subjecting MR. WOODS, as a person with a disability, to discrimination in his civil rights.

78.   Defendant has further violated the NYSCRL by being in violation of the rights provided under the ADA and the New York State Human Rights Law, N.Y. Exec. Law § 296.

79.   Defendant's conduct has resulted in a cognizable injury to MR. WOODS.

80.   MR. WOODS has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

81.   MR. WOODS prays for judgment pursuant to N.Y. Civ. Rights section 40-d, including

statutory damages, and all other relief allowed by law.

WHEREFORE, MR. WOODS demands judgment against Defendant, and requests the following relief:

A.      That this Court declare that Defendant is in violation of the ADA, NYSHRL, and NYSCRL;

B.      That this Court enter an Order directing Defendant to provide portable hand controls or other adaptive driving devices to individuals with disabilities requesting such accommodations at no cost to the customer;

C.      That this Court enter an Order awarding MR. WOODS compensatory damages, as provided for in N.Y. Exec. Law § 297(4);

D.      That this Court enter an Order awarding MR. WOODS statutory damages, as provided for in N.Y. Civ. Rights section 40-d;

E.      That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MR. WOODS, pursuant to 42 U.S.C. § 12205; and

F.      That this Court award such other and further relief as it deems necessary, just and proper.

Respectfully Submitted,

BIZER & DeREUS, L.L.C.
Attorneys for Plaintiff
Andrew D. Bizer (NY Bar # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
    Andrew D. Bizer